ORDER DENYING APPELLANT’S DEMAND TO REISSUE MANDATE
ALTENBERND, Judge.
The issue addressed by this opinion arises because the Florida Supreme Court’s decision in State v. Powell, 998 So.2d 531 (Fla.2008), is pending in the United States Supreme Court and a decision in that case is not expected for at least six months. The issue appears to be a matter of first impression and is also *903 likely to be an issue that arises with great infrequency. Nevertheless, it is a significant issue concerning the power of a district court of appeal.
Can a district court exercise its discretion to recall mandate and stay proceedings in a criminal case-when the dispositive issue in the case is on review in the United States Supreme Court? We conclude that so long as the State asks this court to recall mandate and stay the case during our term of court and during the period in which the State could have filed for review in the U.S. Supreme Court, we have discretion to recall the case and return it to the pipeline of similar cases awaiting the outcome of the U.S. Supreme Court. Accordingly, we deny Mr. Mitchell’s demand that we reissue mandate.
I.
On February 24, 1997, an intruder entered the home of an elderly woman to commit a burglary. The woman testified that she awoke from her sleep and went to investigate the sounds that she heard. When she discovered the intruder, he attacked her and stabbed her fourteen times. She survived but could not identify her attacker.
Mr. Mitchell was not immediately identified as a suspect. He was questioned by detectives in July 2003 while he was an inmate in the Florida prison system. After receiving his Miranda[1] warnings from a standard interview form, he confessed to this crime. Except for his confession, the best evidence suggesting that he may have been the intruder was DNA found on a piece of broken window glass on the exterior of the house.
Mr. Mitchell was convicted by a jury of attempted second-degree murder and armed burglary of a dwelling. He was sentenced to life in prison. On December 14, 2007, this court reversed his judgments and- sentences, ruling that his confession was inadmissible because of a deficiency in the Miranda warning. See Mitchell v. State, 2 So.3d 287, 289 (Fla. 2d DCA 2007). As that opinion explained, our holding was compelled by this court’s recent decision in Powell v. State, 969 So.2d 1060 (Fla. 2d DCA 2007), approved, 998 So.2d 531 (Fla.2008). We certified the same question of great public importance that had been certified in Powell. Mitchell, 2 So.3d at 289.
The State moved this court to stay the issuance of mandate while it sought review in the Florida Supreme Court. We granted that stay and the State filed the appropriate notice in the supreme court. The supreme court took no action on this case, essentially leaving it in the pipeline as it considered the identical issue in Powell.
The Florida Supreme Court issued its opinion in Powell in September 2008, affirming this court’s decision that the standard form Miranda warning was deficient. 998 So.2d at 542. It denied a motion for rehearing in December. Id. at 531. In January 2009, it issued a similar decision, reversing a judgment and sentence of death. Rigterink v. State, 2 So.3d 221 (Fla.2009).
On March 3, 2009, the supreme court denied review in Mr. Mitchell’s case. State v. Mitchell, 6 So.3d 53 (Fla.2009) (table decision). On that same day, it declined to recall mandate and stay proceedings in Rigterink while the State sought review in the U.S. Supreme Court. See Order Denying Appellee’s Motion to Recall and Stay Issuance of Mandate, Rigterink v. State, No. SC05-2162 (Fla. Mar. 4, 2009). On March 11, 2009, this court issued mandate in Mr. Mitchell’s case.
*904 A week later, the State filed its petition seeking certiorari review in the U.S. Supreme Court in Powell. Petition for Writ of Certiorari, Florida v. Powell, 77 U.S.L.W. 3559 (U.S. Mar. 19, 2009) (No. 08-1175). On March 25, 2009, the U.S. Supreme Court entered a stay in Rigter-ink in order to give the State an opportunity to seek review. Florida v. Rigterink, 556 U.S. 1149, 129 S.Ct. 1667, 173 L.Ed.2d 1034 (2009). Then, on April 2, 2009, it granted a stay in Powell pending disposition of the State’s petition for certiorari review. Florida v. Powell, 556 U.S. 1162, 129 S.Ct. 1693, 173 L.Ed.2d 1054 (2009).[2]
In light of these developments, the State filed a motion in April 2009 requesting this court to recall its mandate and stay proceedings pending disposition of Powell in the U.S. Supreme Court. This motion was filed during the period in which the State could have sought review in Mr. Mitchell’s case in the U.S. Supreme Court, although the motion to recall mandate did not represent that the State intended to file for such review.
On May 5, 2009, this court granted that motion, recalling the mandate. When the mandate was recalled, this court assumed that either it would reissue mandate if the U.S. Supreme Court declined jurisdiction or upheld the Florida Supreme Court’s decision, or that it would issue a revised opinion in line with the U.S. Supreme Court’s decision if the U.S. Supreme Court reversed the Florida Supreme Court’s decision. Mr. Mitchell did not file any objection to the recall of mandate at that time. Thereafter, the State did not file a petition for certiorari in the U.S. Supreme Court, presumably because this court had stayed proceedings pending the outcome in Powell.
The duty to issue mandate is a duty fulfilled by the clerk of the court. See Fla. R.App. P. 9.840. In July 2009, the clerk questioned whether the three judges assigned to a specific case had the authority to enter an order recalling mandate or preventing the issuance of mandate when no further proceedings were actually pending in either the Florida Supreme Court or the U.S. Supreme Court. Florida Rule of Appellate Procedure 9.310 provides for stays “pending review,” and the clerk questioned whether the court had the authority to withhold the issuance of mandate under rule 9.340(a) in the absence of a pending motion for rehearing in this court or a pending review proceeding in a higher court. Although this court has held that it has discretion in a criminal case to stay or withdraw mandate when the State announces its intention to seek review in the Florida Supreme Court,[3] we have not addressed our authority in this unusual procedural context, and the issue does not appear to be resolved by existing precedent. Accordingly, it was entirely appropriate for the clerk to raise the question of whether the court was required to issue mandate at this time.
As a result of the clerk’s concern, we ordered memoranda from the parties. The State argues that we should continue to withhold the issuance of mandate, whereas Mr. Mitchell demands that this court issue mandate forthwith. As announced earlier in this opinion, we decline to reissue mandate at this time.
II.
We agree that, as a general rule, the clerk of this court is required to issue *905 mandate at the time specified in the Florida Rules of Appellate Procedure. See Fla. R.App. P. 9.340. While the clerk’s duty in this respect is undoubtedly ministerial, in State v. Miyasato, 805 So.2d 818, 825 (Fla. 2d DCA 2001), this court held that the judges’ power in a criminal case to withhold the issuance of mandate in order to allow the State to seek review in the Florida Supreme Court was an act involving discretion. Rule 9.340 provides that the clerk is obligated to issue mandate after the expiration of fifteen days from either the date a decision is issued or the date that rehearing is resolved “[u]nless otherwise ordered by the court.” See Fla. R.App. P. 9.340(a). Thus, the judges of this court have the power, at least in some circumstances, to control the issuance of mandate by special order.
In this case, the panel initially stayed mandate while the State sought review in the Florida Supreme Court. The panel granted a stay only to that extent. Once proceedings concluded in the Florida Supreme Court and it declined to accept jurisdiction, the clerk properly issued mandate as a ministerial duty without seeking any special permission or authorization from the judges of this court.
The power of the judges to withdraw or recall mandate once it has been issued, however, is a more complex issue, as discussed in Miyasato. There is no question that judicial process values both finality and quality. The issuance of mandate is a step toward finality. However, in Florida and other jurisdictions that still recognize a “term of court,” the finality of a mandate is cushioned by the discretion to recall mandate during the term of court in which it is issued. See Pinecrest Lakes, Inc. v. Shidel, 802 So.2d 486 (Fla. 4th DCA 2001). Thus, it is well established that the judges of a court have the power to recall a mandate so long as they take that action within the term of court. See State Farm Mut. Auto. Ins. Co. v. Judges of Dist. Court of Appeal, Fifth Dist., 405 So.2d 980, 982 (Fla.1981).
As Judge Parmer explained in Pinecrest Lakes:
[T]he issue we face is not whether we have the power to recall our mandate— for clearly we do, as here, within the same term — but whether Pinecrest has shown us a basis to exercise such discretion.
In Chapman v. St. Stephens Protestant Episcopal Church, 105 Fla. 683, 138 So. 630 (1932), the court offered a rationale for exercising discretion to recall a mandate:
“during the terhi at which a judgement of this court is rendered, this court has jurisdiction and power which it may exercise, as the circumstances and justice of the case may require, to reconsider, revise, reform, or modify its own judgments for the purpose of making the same accord with law and justice, and that it has the power to recall its own mandate for the purpose of enabling it to exercise such jurisdiction and power in a proper case.”
802 So.2d at 488 (emphasis supplied by Judge Farmer).
The limited case law on this subject provides little guidance as to the tests we should use in exercising our discretion. There is a wide recognition that this discretion should be exercised sparingly, and we fully agree with that limitation. See generally 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3938 (2d ed. 1996). In this case, we recalled mandate in order to retain the power, if necessary, in the words of Chapman, to revise our opinion “for the purpose of making the *906 same accord with law and justice.” 105 Fla. at 697.
In so doing, we are not unmindful that we are delaying Mr. Mitchell’s case so that his outcome will accord with law and justice under a ruling yet to be made by the U.S. Supreme Court. There is no question that our discretion in this context should be exercised with greater caution than in the context discussed in Miyasato. We recognize that there are factors weighing both in favor and against our decision to exercise discretion in this fashion.
From Mr. Mitchell’s perspective, he desires to return to the trial court for a new trial as soon as possible. Under the law established by this court’s opinion in his case, he is entitled to a new trial in which his confession is inadmissible. Unless additional evidence has been gathered, the only evidence connecting him to the crime will be DNA evidence and perhaps fingerprints that were obtained outside the house, not inside the house. His chances of an acquittal are dramatically higher if the jury does not consider his full confession to this crime. Although he has a significant prior criminal record, nothing in our record suggests that there is any basis to detain him except for these charges. Thus, he has a liberty interest that is not insubstantial.
From the State’s perspective, there are now many defendants in Florida whose statements to the police may be subject to suppression. Although the supreme court expressly declined to make Powell retroactive, this precedent does apply to all pending cases. Most of those cases are being delayed while the U.S. Supreme Court considers this issue. Obviously, both Mr. Powell and Mr. Rigterink have had their cases stayed in a similar manner. Additionally, there are other defendants whose cases are in the' appellate pipeline, and those cases are being delayed by appellate courts waiting for the U.S. Supreme Court’s decision in Powell. There is little basis. to claim that Mr. Mitchell has a greater right to see his case proceed to trial.
The factors discussed in Miyasato included: (1) the likelihood that jurisdiction will be accepted by the supreme court, (2) the likelihood that the movant will prevail on the merits in the supreme court, (3) the likelihood of harm if the stay is not granted, and (4) the likelihood that the harm would be irreparable in the absence of the stay. 805 So.2d at 825. These factors still warrant some consideration in this context.
When we initially recalled the mandate it was obvious from the stays that had been granted that the U.S. Supreme Court was interested in the issue presented by Powell. Of course, at this time, jurisdiction has been accepted in Powell. We will not venture to predict the outcome of Powell in the U.S. Supreme Court, but as later discussed in this opinion, the issue has been a close issue, vigorously debated in both this court and the Florida Supreme Court. The harm to the State of proceeding to trial in this case without a full confession by the defendant when there is no witness that places Mr. Mitchell at the scene of the crime is evident. Double jeopardy would cause the harm to the State, if it occurred, to be irreparable. Thus, the factors discussed in Miyasato tend to support our decision in this case.
Just as the U.S. Supreme Court stayed Rigterink after the Florida Supreme Court declined to stay that case, this court assumed that it would stay Mr. Mitchell’s case if we refused to recall mandate and compelled the State to petition for review in the U.S. Supreme Court. We believed in May, and we believe now, that it is appropriate for this court to follow the *907 lead of the U.S. Supreme Court in this exercise of discretion.[4]
Despite the suggestion by a plurality of the members of the Florida Supreme Court in Rigterink that the ruling in Powell may be the result of a more liberal interpretation of article I, section 9, of the Florida Constitution than that required by the U.S. Supreme Court under the Fifth Amendment,[5] we are entirely convinced that the language of these two constitutional provisions are identical for all practical purposes and that no reason specific to Florida would justify an outcome under the Florida Constitution at odds with the outcome under the U.S. Constitution. See State, Dep’t. of Health & Rehab. Servs. v. Cox, 627 So.2d 1210, 1217 (Fla. 2d DCA 1993) (en banc) (“We conclude that it is not appropriate for this court, as a matter of state constitutional law, to depart from a recent United States Supreme Court ruling under a virtually identical federal constitutional clause unless we are convinced that aspects of Florida’s constitution, law, or announced public policies clearly justify such a departure.”), rev’d, on other grounds, 656 So.2d 902 (Fla.1995). We cannot conceive of any reason why Florida would have a constitutional justification for a more extensive Miranda warning than the warning required by the U.S. Constitution. Accordingly, the issue presented in this case is a major issue governed by the U.S. Constitution. It seems appropriate for a state district court of appeal to recall its mandate to await the dispositive opinion of the U.S. Supreme Court.
If we believed that we were depriving Mr. Mitchell of any firmly established ruling of law, we would not exercise our discretion in this fashion. Even when a ruling is debatable, normally the value of finality should cause this court to refuse to recall a mandate merely for the purpose of awaiting the possibility that the law will change in the near future. In this case, however, the debate has been extraordinary. Powell, of course, was issued by this court after the court en banc had reached a tie in M.A.B. v. State, 957 So.2d 1219 (Fla. 2d DCA 2007). In order to allow the issue to reach the Florida Supreme Court, the judges of this court agreed to abide by the ruling of the next three-judge panel that addressed the issue. If Mr. Mitchell’s case had been the next case, our court’s outcome would have been different. See Mitchell, 2 So.3d at 290 (Altenbernd, J., concurring). In that instance, it would either be a case still pending in the pipeline of the Florida Supreme Court, or it would have joined Powell and Rigterink in the U.S. Supreme Court.
It has been twelve years since this crime was committed; waiting a few more months in order to abide by the dispositive ruling of the U.S. Supreme Court in .this unusual case appears to be one of .those rare occasions when. we should exercise discretion to hold our mandate in this court.
DAVIS[6] and KELLY, JJ.S Concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. It ultimately granted review in Powell on June 22, 2009. Florida v. Powell, 557 U.S. 918, 129 S.Ct. 2827, 174 L.Ed.2d 551 (2009).

. See State v. Miyasato, 805 So.2d 818, 825 (Fla. 2d DCA 2001).

. We are uncertain whether the State could now successfully seek review in the U.S. Supreme Court in this case if we were to recede from our order in May and reissue mandate at this time.

. See Rigterink, 2 So.3d at 241.