FIRST BOND & MORTGAGE COMPANY, a Corporation, *Appellant*, vs. PEARL S. YANCEY, individually and as Trustee for MARGARET BELLE YANCEY, et al., *Appellees.*

139 So. 597.

Division A.

Opinion filed February 11, 1932.

230

*Giles & Gurney,* for Appellant;
*Dickenson & Dickenson,* for Appellees.

BUFORD, C. J.—The appellant filed suit to foreclose a

mortgage against the defendants, T. A. YANCEY, individually and as Trustee for Margaret Belle Yancey, Elizabeth Pearl Yancey and Evelyn Lurlene Yancey, and PEARL S. YANCEY, the wife of T. A. YANCEY, FIRST NATIONAL BANK IN ORLANDO, a corporation, and P. H. ROBERTS and GERTRUDE C. ROBERTS, his wife.

The bill alleges that the mortgage was executed by T. A. Yancey, individually and as Trustee for Margaret Belle Yancey, Elizabeth Pearl Yancey and Evelyn Lurlene Yancey, and Pearl S. Yancey. During the progress of the suit T. A. Yancey was removed as Trustee of the estate involved and Pearl S. Yancey was appointed Trustee of the estate. Thereafter, Pearl S. Yancey as Trustee for Margaret Belle Yancey, Elizabeth Pearl Yancey and Evelyn Lurlene Yancey, filed demurrer to the bill of complaint. The demurrer was overruled and the defendants allowed further time in which to answer. The order overruling the demurrer was affirmed on appeal by this Court on the 11th day of November, 1929, 98 Fla. 428, 123 So. 814.

Thereafter, Pearl S. Yancey, as Trustee answered the bill of complaint in which she denied that T. A. Yancey as Trustee was or ever became indebted to the First Bond & Mortgage Company in the sum of Six Thousand, Five Hundred ($6,500.00) Dollars, the amount which the mortgage was given to secure, or any other amount, and alleges in effect that the obligation sued on is the obligation of T. A. Yancey individually and that the obligation was incurred by the said T. A. Yancey borrowing money from the complainant for the sole and exclusive purpose of his benefit and for the use of Yancey's Store, Inc., a corporation; that Yancey had no authority to pledge the trust property to secure his obligation and that the complainant at the time of loaning the money to Yancey and at the time of the execution of the notes and mortgage by Yancey well knew that the said T. A. Yancey was borrowing said money

for the use and benefit of Yancey's Store, Inc., a corporation, and for his own individual benefit, and that the complainant knew that the property pledged in the mortgage was property held by Yancey in trust and that he had no lawful right or authority to pledge or mortgage the same for the benefit of himself individually or for the benefit of Yancey's Store, Inc.

A master was appointed and testimony was taken.

Later, Pearl S. Yancey as Trustee filed an amended answer which set up practically the same state of facts set up in the original answer but with some amendment not necessary to be discussed in this opinion and, upon testimony being submitted to the Court, a decree was entered, the pertinent part of which was as follows:

"The cause was heard on pleadings and testimony in the cause, and counsel for the respective parties, having appeared and argued said cause, and the court having taken same under advisement, and now being fully advised of its ruling, finds that the equities are with the defendants, Pearl S. Yancey, individually, and as Trustee for Margaret Belle Yancey, Elizabeth Pearl Yancey and Evelyn Lurlene Yancey, and that the complainant is not entitled to the relief prayed in its bill of complaint as against Pearl S. Yancey, individually, and as Trustee for Margaret Belle Yancey, Elizabeth Pearl Yancey and Evelyn Lurlene Yancey; and it appearing to the Court that the suit is primarily for the foreclosure of a mortgage upon the property described in the Bill of Complaint, and that unless the complainant can maintain the suit to foreclose said mortgage as set out in said bill of complaint, that it would not be entitled to any relief in this cause.

It is, therefore, Ordered, Adjudged and Decreed that the Complainant's Bill of Complaint be, and the same is hereby dismissed at the cost of the complainant."

The controlling questions presented for consideration may be said to be:

1st: Was the property involved in the suit in trust by T. A. Yancey for the use of his three minor daughters,

and, if so, did T. A. Yancey have lawful right and authority to incumber and mortgage the property to procure a loan from which the *cetuis que trustents* were to receive no benefit and did receive no benefit but for his individual use and the use of the corporation in which he was interested and, if so, then;

2nd: Was the evidence sufficient to overcome the answer and amended answer of Pearl S. Yancey as Trustee so as to show a loan made to T. A. Yancey as Trustee and not to T. A. Yancey, individually?

If the latter question is answered in the negative, then:

3rd: May a Trustee mortgage a trust estate for a purpose other than those authorized by the instrument or instruments creating this trust estate in him?

If he cannot, then

4th: Was the mortgage here under consideration executed for a purpose not authorized by the deed under which the property was conveyed to the Trustee?

This being answered in the affirmative, then we must come to the final question, which is:

5th: Did the complainant in this case have knowledge at the time it took the mortgage that the mortgage was given to secure a loan to T. A. Yancey for his personal use and for purposes not authorized by the deed of trust under which the mortgagor, the Trustee, held title?

There is no material issue raised as to questions of fact. It may be said that the evidence shows that the property involved was trust property and that under the trust deed the Trustee had no lawful authority to pledge or incumber same to procure money to meet his individual obligations and wants or the obligations of Yancey's Stores, Inc.

The evidence also shows that the obligation secured by the mortgage was a loan to T. A. Yancey and Yancey's Stores, Inc. and not for the benefit of cestuis que trustent;

that the loan was made for the purpose of T. A. Yancey being thereby enabled to pay his individual debt to the First National Bank in Orlando and to procure other funds for his individual use and probably the use of Yancey's Stores, Inc.

The evidence further shows that the President of the First National Bank in Orlando upon behalf of the Bank negotiated a loan to Yancey and took a mortgage from Yancey as Trustee to secure the loan which mortgage embraced the property here under consideration; that the loan was not paid at maturity, nor for a long time thereafter; that the President of the Bank was also Vice-President of the Mortgage Company and that the President of the Bank, knowing that the mortgage made to the Bank to secure the loan was not valid as against the trust property, accepted the application of Yancey to the Mortgage Company for a loan from the Mortgage Company of which he was Vice-President to enable Yancey to pay up his obligation to the Bank. He was Vice-President of the Mortgage Company, a member of the Board of Directors and on the Finance and Loans Committee of the Mortgage Company and in this capacity he recommended the loan by the Mortgage Company and was instrumental in having the loan approved by the Finance and Loan Committee, otherwise known as the Executive Committee. The action of the Executive Committee in granting the loan was approved by the Board of Directors. It was shown that this gentleman who was President of the First National Bank in Orlando and who was Vice-President, a member of the Board of Directors and a member of the Finance and Loans Committee of the Mortgage Company knew all the facts in regard to the authority, the lack of authority, and the purpose to be accomplished by T. A. Yancey in the securing of the loan. The borrower, Yancey, dealt with the President of the First National Bank in negotiating the original loan and he dealt with him as Vice-President

of the Mortgage Company in procuring the loan which the mortgage here under consideration was given to secure.

The only question left for us to determine is whether or not the Mortgage Company was chargeable with the knowledge and information in the possession of its Vice-President who negotiated this loan with the borrower and, therefore, was chargeable with the knowledge that the execution of the mortgage by Yancey was unauthorized and created no lien against the estate of the *cestuis que trustent.*

Appellant contends that this case is ruled by the enunciation of this Court in the case of Aycock Lumber Company vs. First National Bank, 54 Fla. 604, 45 Sou. 501, and Roess Lumber Co. vs. State Exchange Bank, 68 Fla. 324, 67 Sou. 188. We think that neither case is in point. In both of those cases an officer of the bank negotiated or discounted a note at the bank for valuable consideration and before maturity of the note and acted in his own behalf, or in behalf of some other company or association which he represented. Here the Vice-President of the Mortgage Company negotiated the loan with his company on the one hand and Yancey on the other. It is true that another corporation, First National Bank in Orlando, was to benefit by the transaction. There can be no doubt but what it was the duty of the Vice-President, the member of the Board of Directors and the member of the Committee on Finance and Loans to communicate such knowledge as he had in regard to the securities offered by Yancey to his fellow officers, Directors and Committeemen.

In 14-A C. J. 491 the author says:

"Where there are dealings between two corporations or between a corporation and an individual through the intervention of a common officer or agent, the question whether the corporation is to be charged with notice of what is known to the agent by virtue of his relation to the other corporation, or to the other party, depends upon the circumstances of each case; if under the circumstances it is his duty to communicate such knowl-

edge, the corporation to which he owes such duty will be chargeable with his knowledge.''

Mr. Pomeroy in his excellent work on Equity Jurisprudence, 3rd Edition, after stating the rule as enunciated by this Court in Aycock Lumber Co. vs. First National Bank, supra, in section 672, page 1167, says:

''The foregoing requisite, general as it is in its application, is subject to an important and well-settled limitation, equally depending upon motives of expediency. Where the transaction in question closely follows and is intimately connected with a prior transaction in which the agent was also engaged, and in which he acquired material information, or where it is clear from the evidence that the information obtained by the agent in a former transaction was so precise and definite that it is or must be present to his mind and memory while engaged in the second transaction, then the foregoing requisite becomes inapplicable; the notice given to or information acquired by the agent in the former transaction operates as constructive notice to the principal in the second transaction, although that principal was a complete stranger to and wholly unconnected with the prior proceeding or business. The explanation of this special rule is plainly to be found in the notion that the information obtained by the agent in his former employment was of such a nature, so definite and certain, that it amounted to actual *knowledge;* and as *knowledge* it is retained by him and carried with him into the subsequent business which he transacts on behalf of his new principal. While this particular rule is settled by a strong array of authorities, the courts show a plain determination not to extend it, but to keep it confined within narrow and necessary limits. The two essential requisites of the general rule, together with the foregoing limitation, are the results or phases of one legal conception. In order that the information obtained by an agent may be a constructive notice to his principal in any given transaction, it must be present to the agent's mind and memory while he is engaged in the transaction which is sought to be affected. This is universally true. If the agent acquired the information while acting for

his principal, and *while engaged in that very same trans-action* then it is conclusively presumed that he retains the information present to his mind and in his memory; a failure of memory on his part cannot be shown, and the principal is charged with the constructive notice.''

The rule as enunciated by Mr. Pomeroy has been adhered to in Berry vs. Rood, 168 Mo. 316, 67 S. W. 644; Brothers et al. vs. Bank of Kaukauna, 84 Wisc. 381, 54 N. W. 786; William Bergenthal Co. vs. Security State Bank of Monticello, 102 Minn. 138, 112 N. W. 892; L. E. Banon Savings Bank vs. Hollenbeck et al., 29 Minn. 322, 13 N. W. 145; Taylor vs. Felder, 3 Ga. App. 287, 59 S. E. 844; Willars, as Trustee, vs. Denise, 50 N. J. Equity 482, 26 Atl. 29; and in many other cases cited in those several authorities.

Therefore, it appears that the decree of the Chancellor was without error and should be affirmed. It is so ordered.

Affirmed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND DAVIS, J., concur in the opinion and judgment.