176 So.2d 366 (1965)
David APPLEFIELD, Appellant,
v.
COMMERCIAL STANDARD INSURANCE COMPANY, a Texas Corporation, Appellee.
No. 4906.
District Court of Appeal of Florida. Second District.
May 28, 1965.
Rehearing Denied June 28, 1965.
*368 H. Rex Owen, of Bussey, Simmons and Owen, St. Petersburg, for appellant.
George B. Foss, Jr., of Fowler, White, Gillen, Humkey & Trenam, St. Petersburg, for appellee.
STURGIS, WALLACE E., Associate Judge.
David Applefield, the appellant brought this suit in equity for a declaratory decree and other relief against Commercial Standard Insurance Company, a Texas corporation, praying that the court (1) declare plaintiff's rights under title insurance binders issued by defendant incident to plaintiff's purchase of certain real property mortgages, (2) require defendant to issue to plaintiff permanent policies of title insurance on the real property covered by said binders, (3) require defendant to remove certain encumbrances that are alleged to be superior to mortgages owned by the plaintiff and allegedly covered by the binders as first liens upon the subject real property, and (4) allow plaintiff a reasonable attorney's fee and his costs in the suit.
The amended complaint charged that on January 4, 1962, the defendant, Commercial Standard Insurance Company, a title insurance company through its authorized agent, Gibralter Title, Inc., executed and delivered to The Theo. Rosengarten Co., Inc., and/or assigns, interim title insurance binders agreeing to insure as first liens certain mortgages held and owned by The Theo. Rosengarten Co., Inc., upon fourteen parcels of real property; that The Theo. Rosengarten Co., Inc., for consideration, assigned said mortgages to plaintiff and delivered to him said title insurance binders thereon; that said title insurance binders, which were originally issued by an insurer known as Federal Title Insurance Company, were subsequently, at the request of defendant's agent, Gibralter Title, Inc., replaced by defendant's title insurance binders in the premises. Plaintiff alleged that except for his reliance upon the original binders and those substituted therefor by defendant's agent, Gibralter Title, Inc., he would not have purchased said mortgages; that within the time required by the binders he requested defendant to issue said policies and that he had been and still was ready, willing and able to do all things required for issuance thereof; that he thereafter secured an ownership and encumbrance report which disclosed that on the date defendant issued its binders, all but one of the subject parcels of property were encumbered with prior liens which, despite plaintiff's demand, defendant had refused to remove or otherwise rectify. Plaintiff thereupon prayed for relief as hereinabove stated.
Defendant's answer generally denied liability and for specific defenses alleged, in substance:

FIRST
That on June 2, 1958, the defendant, by a written agency agreement, appointed one *369 Howard Goll its general agent in the State of Florida
"with authority to receive applications for title insurance upon all lands situated in said territory; to issue reports of the condition of title to lands described in such applications; to receive and collect premiums and/or fees for title insurance, either through himself or through attorneys or sub-agents approved as hereinafter provided; and to countersign and deliver policies of title insurance, either through himself or through sub-agents approved as hereinafter provided."
The agency agreement contemplated the nomination by Goll of sub-agents who, only when approved by defendant pursuant to written contract to be entered into between Goll, the defendant, and the sub-agent, would then be authorized
"to receive applications for title insurance, to issue reports of condition of title, to receive and collect premiums and/or fees for title insurance, and to countersign and deliver policies of title insurance."
The general agency agreement with Goll also provided:
"4. No commitment to insure nor policy of title insurance shall be issued or delivered by * * * [Goll] or his sub-agents unless and until the complete title as shown by the abstract or records has been examined and approved by an attorney who has been duly nominated by * * * [Goll] and/or a duly qualified sub-agent and approved by * * * [defendant] as a title examiner. It is further agreed that all papers incidental to the transaction in connection with which the title insurance is issued shall also be submitted to said approved title examiner and approved by him. It is expressly understood and agreed that said title examiner in such transaction is representing the parties to this contract and is not in the employ of the applicant for such title insurance.
"5. For the purpose of examination of such titles, it is agreed that * * * [Goll] and/or his sub-agents shall furnish or cause to be furnished to said approved title examiner a complete abstract or a correct run sheet showing all instruments of record affecting the title under examination. It is agreed that * * * [Goll] and/or his duly appointed countersigning agents will keep a complete file showing the run sheet and search sheets with the notations, if any, made by the title examiner examining the record and showing the facts of the examination, together with a statement in writing showing the examination and the record examined and showing the vesting and exceptions and objections thereto, giving particular care to all phases thereof, and among other not here specified, to the examinations of wills and instruments creating life estates with remainder over, future estates and trusts of powers of sale where title is derived through such instruments, and to building restrictions and easements upon such lands with a notation of the disposition proposed to be made thereof incident to the issuance of the title policy, signed by the approved title examiner."
Further answering, defendant alleged that on August 7, 1961, it and its general agent, Goll, entered into a written agreement with Gibralter Title, Inc., whereby the latter was appointed sub-agent for Pinellas County, Florida, with authority to receive applications for title insurance upon lands situated in said territory, to issue reports of the condition of title to lands described in such applications, to receive and collect premiums and/or fees for title insurance, and to countersign and deliver *370 policies of title insurance. The sub-agency contract further provided:
"3. No commitment to insure nor policy of title insurance shall be issued or delivered by * * * [Gibralter] unless and until the complete title as shown by the abstract or records has been examined and approved by an attorney who has been duly nominated by * * * [Gibralter] and approved by * * * [defendant] as a title examiner. It is further agreed that all papers incidental to the transaction in connection with which the title insurance is issued shall also be submitted to said approved title examiner and approved by him. It is expressly understood and agreed that said title examiner in such transaction is representing the parties to this contract and is not in the employ of the applicant for such title insurance.
"4. For the purpose of examination of such titles, it is agreed that * * [Gibralter] shall furnish or cause to be furnished to said approved title examiner a complete abstract or a correct run sheet showing all instruments of record affecting the title under examination. It is agreed that * * * [Gibralter] will keep a complete file showing the run sheet and search sheets with the notations, if any, made by the title examiner examining the record and showing the facts of the examination, together with a statement in writing showing the examination and the record examined and showing the vesting and exceptions and objections thereto, giving particular care to all phases thereof, and among others not here specified, to the examination of wills and instruments creating life estates with remainder over, future estates and trusts of powers of sale where title is derived through such instruments, and to building restrictions and easements upon such lands with a notation of the disposition proposed to be made thereof incident to the issuance of the title policy, signed by the approved title examiner."
Defendant further alleged, in effect, that even assuming the alleged title binders were at plaintiff's request executed and delivered by defendant's representative, Gibralter Title, Inc., as of January 4, 1962, no title examination had been made by the examining attorney, Allen Samuels, as set forth in each of said binders, and that defendant had no knowledge of said fact; however, that the plaintiff, individually, or through his duly authorized agent or attorney, the said Allen Samuels, had personal knowledge or intimation of said fact, but nevertheless took said binders and later procured the purported "extension" or "revival" thereof from Gibralter Title, Inc., which was not authorized to originally issue, extend or revise same, and that therefore each of said binders had expired.
Defendant further asserted that the plaintiff and/or his agent or attorney, Allen Samuels, knew that said Allen Samuels was or was to become the approved examining attorney for defendant, through defendant's sub-agent, Gibralter Title, Inc., and that said attorney had not and was not going to examine the title to the properties and mortgages purportedly to be insured by said title binders; however, said title binders specifically recited that such examination had been made, as required by the aforesaid agency and sub-agency agreements; that such was a condition precedent to the issuance of said binders and that defendant had no knowledge of the fact that such examination had not been made.
Defendant admitted that plaintiff had requested that permanent policies of insurance be issued to him and that defendant had failed and refused to do so or to otherwise comply with the terms of the alleged interim binders, and had not removed any of the alleged encumbrances or otherwise taken any action to protect plaintiff.

*371 SECOND
For a second defense defendant alleged, in substance, that Gibralter Title, Inc., and The Theo. Rosengarten Co., Inc., were both Florida corporations owned and controlled by Theo. Rosengarten, president of both, June M. Rosengarten (his wife), secretary of both, and/or Robert Konhauzer (his son-in-law), vice president of both. That the circumstances giving rise to the issuance of the subject title binders were as follows: In February, June and July, 1961, the plaintiff on the one hand, and The Theo. Rosengarten Co., Inc., Theo. Rosengarten individually, and June M. Rosengarten, his wife, individually, on the other hand, entered into certain agreements whereby plaintiff loaned substantial sums of money to The Theo. Rosengarten Co., Inc., and received notes therefor, which notes were endorsed by Theo. Rosengarten and June M. Rosengarten; that plaintiff personally participated in said transactions and was also represented therein by his agent or attorney, the aforesaid Allen Samuels; that as security for the payment of said notes The Theo. Rosengarten Co., Inc., delivered to plaintiff the subject mortgages and mortgage notes secured thereby, and made absolute assignments of said mortgages to plaintiff; that said mortgages included those on the parcels of land upon which the title binders attached to plaintiff's complaint were subsequently issued; alternatively, that later mortgages, mortgage notes secured thereby, and absolute assignments of said mortgages were substituted with plaintiff for the original mortgages, mortgage notes and absolute assignments of the mortgages which were the subject matter of the aforesaid original assignments, and that at the later time there was also substituted the later title binders of the defendant which are the subject matter of plaintiff's complaint.
Defendant further alleged that at the time it first issued said title binders the said Theo. Rosengarten and/or June Rosengarten and/or Robert Konhauzer, acting individually, jointly and severally, and/or acting through Gibralter Title, Inc., and/or The Theo. Rosengarten Co., Inc., falsely and fraudulently procured the issuance of said title binders, with plaintiff's personal knowledge thereof, or with knowledge imputed to plaintiff through his agent or attorney, Allen Samuels, but without defendant's knowledge, in that: On or about February 17, June 8, and July 5, 1961, when plaintiff entered into his agreements with The Theo. Rosengarten Co., Inc., Theo. Rosengarten and June Rosengarten, his wife, plaintiff obtained from Theo. Rosengarten, as president of The Theo. Rosengarten Co., Inc., affidavits of Theo. Rosengarten that the mortgages being absolutely assigned to plaintiff as security for payment of said notes were first mortgage liens on the real property described in said mortgages and that except for the mortgages contemporaneously assigned there were no liens against any of the mortgaged realty; that prior to August 23, 1961, however, said persons and/or corporation, or one or more of them, with plaintiff's personal knowledge and/or with knowledge imputed to plaintiff through his agent or attorney, the said Allen Samuels, but without defendant's knowledge or acquiescence, caused the said title binders, except one which was later issued, to be issued and delivered to plaintiff without first having the titles to the real properties allegedly covered by said binders examined and/or certified by an approved attorney as designated on the face of said binders; that plaintiff thereby became a party to a conspiracy with said persons and/or companies, or one of them, to obtain said title binders without the required examination of the title by defendant's approved examining attorney; and plaintiff therefore comes into this court of equity with unclean hands.
Defendant further alleged that at the time of the alleged original issuance of said title binders, on or prior to January 4, 1962, plaintiff and/or his agent or attorney, Allen Samuels, had personal knowledge or intimation of the alleged prior liens or encumbrances described in plaintiff's amended *372 complaint, so that plaintiff is barred from recovery.

THIRD
For a third defense defendant alleged that from August 23, 1961, until sometime in March 1962, Allen Samuels was its duly authorized and approved examining attorney, but that without defendant's knowledge said attorney was prior to, during and after said period plaintiff's duly authorized agent or attorney for dealing with the matters and transactions involving The Theo. Rosengarten Co., Inc., Theo. Rosengarten individually, June M. Rosengarten individually, Robert Konhauzer individually and Gibralter Title, Inc., in the matters and circumstances set forth in defendant's first and second defenses, so that even if the alleged title binders are prima facie valid, the transactions whereby plaintiff received the same are voidable at defendant's election, and defendant has so elected.

FOURTH
For a fourth and alternative defense defendant alleged that the title binders in suit were issued to The Theo. Rosengarten Co., Inc., which concern had prior knowledge of the prior liens or encumbrances set forth in plaintiff's amended complaint; and that Gibralter Title, Inc., defendant's sub-agent, and The Theo. Rosengarten Co., Inc., with knowledge of said prior liens and encumbrances, conspired to issue said title binders to plaintiff without the required prior examination of the title by defendant's approved examining attorney. That plaintiff subsequently received said title binders assignments from The Theo. Rosengarten Co., Inc., and that said assignor retained interests in the mortgages covered under said title binders; that plaintiff therefore holds said title binders subject to the equities and defenses which exist against The Theo. Rosengarten Co., Inc.; and that defendant has not received or accepted any payments or benefits from the alleged issuance of said binders.
The defendant thereupon prayed that the court would determine the validity vel non of said alleged interim title binders, declare same to be null and void, and grant such other relief as may be just in the premises.
On the issues made by the amended complaint and answer thereto, the cause was by consent of the parties submitted to a special master who, following a pretrial conference, heard the evidence and made findings of law and fact based on the pleadings and proofs. The decree appealed adopted, ratified and confirmed the master's findings, conclusions and recommendations, and thereupon denied the relief sought by plaintiff, cancelled the subject title binders, awarded a fee of $850.00 to be paid by defendant to plaintiff for the services of plaintiff's attorney herein, and taxed $158.97 costs to be paid by plaintiff to defendant for the expenses "involved in proving the Request for Admissions."
Appellant contends that the Special Master applied an erroneous rule of law to the facts in that (a) the appellee-insurer's sub-agent, Gibralter Title, Inc., is conclusively shown to have made the title examination upon which the title insurance binders were issued to appellant and under such circumstances appellee cannot escape liability on the ground that its regularly designated examining attorney did not make such examination; and (b) that where, as in this case, the insurer's regularly designated examining attorney represents both the insurer and the insured in the transaction resulting in issuance of the title binders and, without knowledge of presently existing title defects, approves the title in reliance on an expressly authorized examination thereof by insurer's sub-agent and a certificate of such sub-agent to the effect that defects of title discovered by the attorney in the course of an earlier search had been cured, the insurer cannot escape liability on the ground that said attorney, as agent for the insured, approved the title with knowledge of such present defects and that such knowledge is imputed to the insured. Appellant further contends that appellee *373 is in any event liable to appellant in the premises because, assuming that appellee's sub-agent, Gibralter Title, Inc., and others involved in the transaction perpetrated a fraud on appellee by causing the subject title binders to be issued to appellant under the circumstances developed by the proofs, and assuming that neither appellant nor appellee had knowledge of or participated in the fraud, the appellant should nevertheless prevail in obedience to the principle that where one of two innocent parties must suffer through acts of a third person, the loss should fall upon that one who by his conduct created the circumstances which enabled the third person to perpetrate the wrong or cause the loss.
The appellee, by an appropriate cross-assignment of error, challenges the court's assessment against it of a one-half part of the court costs.
At the pretrial conference it was agreed:
1. That the complaint correctly lists encumbrances that are prior in dignity to the mortgages covered by the binders issued to plaintiff, and Theo. Rosengarten had knowledge thereof when he transferred the subject mortgages to plaintiff.
2. That at all times material to this action Theo. Rosengarten was president, Robert Konhauzer vice president, and June Rosengarten secretary of Gibralter Title, Inc., and The Theo. Rosengarten Co., Inc.
3. That although plaintiff had made loans to The Theo. Rosengarten Co., Inc., and had taken from it assignments of the subject notes and mortgages as security, the makers of the notes continued until February 1962 to make payment to said assignor.
4. That on March 23, 1962, defendant revoked Gibralter Title, Inc.'s authority as its sub-agent and thereafter had its attorney, Allen Samuels, recover for it all policies, binders, and other forms in Gibralter Title, Inc.'s hands.
It was also stipulated that attorney Samuels, at the closing between The Theo. Rosengarten Co., Inc., and plaintiff, represented both the plaintiff and Gibralter Title, Inc., defendant's sub-agent, and that at some time prior to the closing he had examined the public records and found various encumbrances on the properties in question. The parties extensively argued before the master whether or not Samuels' prior knowledge in that behalf should be imputed to the plaintiff, and the master held that it would not. He further ruled that unless the defendant established that plaintiff had actual knowledge of the prior encumbrances, the evidence of Mr. Samuels' knowledge would be excluded from the record at the trial.
Following an extensive trial where voluminous testimony was taken, the Special Master made the following findings of fact, in substance:
1. That defendant was qualified to do business in Florida; that Howard Goll was its authorized Florida agent and Gibralter Title, Inc., its authorized sub-agent; that Theo. Rosengarten was president of Gibralter Title, Inc., and of The Theo. Rosengarten Co., Inc., and Robert Konhauzer was vice president of Gibralter Title, Inc.
2. That on February 17, 1961, June 8, 1961, and July 5, 1961, plaintiff made three separate loans aggregating $96,000.00 to The Theo. Rosengarten Co., Inc., and received as security therefor assignments of certain mortgages, including those identified in the binders received in evidence; that on October 19, 1961, one of the mortgages identified in and covered by the binders was substituted for a mortgage assigned to plaintiff by one of the earlier transactions.
3. That on the dates of the respective loans, Federal Title Insurance Company, through its sub-agent, Gibralter Title, Inc., had issued and delivered to plaintiff binders showing as first liens the mortgages which had been assigned to plaintiff, and on the dates said loans were closed one Allen Samuels was attorney for plaintiff and for *374 The Theo. Rosengarten Co., Inc., and was also an approved attorney for Federal Title Insurance Company.
4. That prior to the issuance of the title insurance binders by Federal Title Insurance Company, and within the period from March 1959 to July 1961, said attorney had examined the title to the properties covered by the mortgages assigned to plaintiff and had ascertained that there were encumbrances thereon prior in dignity to the mortgages listed by said original binders; that at the closing the facts of such examination and the existence of the prior liens were made known to the plaintiff by said attorney, whereupon it was agreed that they would accept Rosengarten's affidavit to the effect that the liens had been paid off and that the mortgages being assigned were first liens on the property; that the titles were not examined on the closing dates, but such affidavits of Rosengarten were obtained and delivered to plaintiff; and that the said affidavits were false. The master found that although the binders recited that Samuels had examined the title to the subject properties prior to the issuance of the binders, it was not clear that he had done so.
5. That on August 7, 1961, a written agreement was made between the defendant, Howard Goll and Gibralter Title, Inc., whereby Gibralter Title, Inc., was appointed defendant's sub-agent in Pinellas County, Florida, and that subsequently the defendant appointed attorney Samuels its approved examining attorney; that prior to the execution of said agreement of August 7, 1961, but in contemplation thereof, defendant's general agent, Howard Goll, had authorized defendant's binders to be substituted for the binders of Federal Title Insurance Company without re-examination of the titles, and that this authorization was given because Samuels had represented to Goll that he (Samuels) had checked the titles as of the time the mortgages were of record and that they would still be first mortgages upon the property involved.
6. That on August 12, 1961, August 18, 1961, and August 21, 1961, respectively, defendant's binders were issued and delivered to plaintiff by Gibralter Title, Inc., in substitution for the original Federal Title Insurance Company's binders, and on October 19, 1961, another title binder of defendant was issued and delivered to plaintiff by Gibralter Title, Inc.; that each of the binders provided that it was to become null and void unless a policy of title insurance was issued and the premium paid within ninety days of its date; and it was further provided thereby that it was issued and accepted upon the understanding that the insured had no personal knowledge or intimation of any defect, objection, lien or encumbrance affecting the premises other than those shown under Schedule B thereof, and that failure of the insured to disclose any such information would render the binder and any policy issued based thereon null and void as to such defect, objection, lien or encumbrance.
7. That on January 4, 1962, which was more than 90 days after issuance of said binders except the one issued October 19, 1961, and before the payment of the premiums thereon, Gibralter Title, Inc., defendant's sub-agent, at the request of said attorney, Allen Samuels, updated all of defendant's binders to that date.
8. That in late February or early March 1962 The Theo. Rosengarten Co., Inc., defaulted in payment of plaintiff's loans and plaintiff, upon inquiry of the owners of the various properties covered by the assigned mortgages and notes, and upon examination of the public records by his attorney, the said Allen Samuels, discovered that said prior encumbrances had not been paid off; that Samuels then notified defendant of the existence of the prior encumbrances and on behalf of plaintiff made demand for issuance of the policies, and tendered to defendant, through its attorney, payment of the premium estimated by him to be due, but defendant's attorney refused to accept tender and defendant refused to issue the *375 policies, whereupon plaintiff brought this suit.
9. That the parties had duly stipulated that the encumbrances or title defects listed by paragraph 4 of the amended complaint with respect to Parcels I through XI, inclusive, and with respect to Parcels XIII and XIV, existed on the dates defendant's binders were issued, were prior in dignity to the mortgages listed and covered by the individual binders, and were still outstanding.
Based on said findings, the Special Master concluded:
1. That a substantial controversy existed as to the respective rights of the parties under the terms of the interim binders.
2. That defendant's sub-agent, Gibralter Title, Inc., was in possession of defendant's title binder forms and had apparent authority to issue the subject title binders to plaintiff on the dates the same were in fact delivered, and said sub-agent also had authority to update the binders to January 4, 1962; and that payment of the insurance premium was not a prerequisite to validity of the title binders.
3. That defendant's title binders were issued directly to plaintiff and did not pass by assignments of The Theo. Rosengarten Co., Inc.
4. That the up-dating of defendant's title binders to January 4, 1962, did not constitute new contracts of the defendant but merely extended the effective dates of the binders for an additional 90 days.
5. That Theo. Rosengarten and his alter ego, Gibralter Title, Inc., defendant's sub-agent, perpetrated a fraud upon defendant by the issuance to plaintiff of the subject binders without benefit of the prerequisite examination of title to the subject property and with actual knowledge of the existence of prior encumbrances on title to said property of which the defendant, as principal, did not have any knowledge, and that the knowledge of defendant's said sub-agent was not imputed to it; that said sub-agent was acting adversely to defendant's interests and its acts in the premises were such as to raise a presumption that it would not communicate its knowledge of the prior liens to the defendant.
6. That plaintiff did not consciously participate in said fraud of The Theo. Rosengarten Co., Inc., and Gibralter Title, Inc., but he was in a position to have discovered same and was in possession of information sufficient to put him on inquiry which would have disclosed the fraud.
7. That on the dates the original Federal Title Insurance Company binders were issued and on the dates defendant's binders were substituted therefor, plaintiff had personal knowledge, related to him by his attorney, Allen Samuels, of the existence of the prior encumbrances, and that in closing the loans he did not rely on Federal Title Insurance Company's or defendant's binders, but in fact relied on the mentioned affidavits that were made by Theo. Rosengarten in the premises.
8. That plaintiff's personal knowledge of the encumbrances, other than those listed under Schedule B of Commercial Standard Insurance Company's binders, was not disclosed by him to defendant, and that his failure to disclose same rendered the binders null and void under the terms thereof.
On the basis of said findings and conclusions the Special Master recommended: (1) that the court declare defendant's said title binders to be null and void and that they be cancelled; (2) that the costs of the suit be taxed equally to the plaintiff and defendant.
We pause to note that appellant's brief violates Florida Appellate Rule 37(f) *376 (4), 31 F.S.A., in that it fails to designate in relation to appellant's version of the points of law involved the specific assignments of error giving rise to such points and the argument presented thereunder. The subject rule serves the important purpose of alerting adverse counsel, as well as the reviewer, to the particular phase of the proceedings assailed by the appeal. Indeed, it is essential to the right to present and argue a point on appeal that the same arises in consequence of transaction in the proceedings below, the occurrence of which forms the basis for an appropriate assignment of error.
Where, as in this case, a Special Master is appointed by agreement or consent of the parties, his findings of fact, conclusions of law, and recommendations should be approved and adopted by the chancellor unless clearly erroneous or unless he has misconceived the legal effect of the evidence. Ozgowicz v. Leighton, Fla.App.2d 1963, 151 So.2d 21; 2 Fla.Jur., Appeals, Secs. 314 at pp. 671-677, and 316 at pp. 679-682. The final decree appealed comes to this court clothed with a presumption of validity and should not be reversed if it appears from the record as a whole that the result is in substantial accordance with the law and consistent with the justice and equity of the case as shown by the complaint, answer, testimony, and report of the master. 2 Fla.Jur., Appeals, Sec. 358 at p. 744.
Appellant assumes as a fact that the affidavits given by Theo. Rosengarten to the appellant at the time of closing the loans were furnished in his capacity as a title insuring agent or, in appellant's words, as the "alter ego" of Gribralter Title, Inc. The Special Master did not so find and the evidence does not compel that conclusion. The subject affidavits recite that the affiant (Theo. Rosengarten) "is the President of The Theo. Rosengarten Co., Inc., and makes this affidavit as such officer," which negatives the proposition that he was acting as agent for the title insurer. Moreover, the fact is that at the time the affidavits were given appellee had not constituted Gibralter Title, Inc., or The Theo. Rosengarten Co., Inc., or Allen Samuels, its agent or representative in any particular. The title insurer then involved was Federal Title Insurance Company and appellant was dealing with Theo. Rosengarten and The Theo. Rosengarten Co., Inc., in a series of arm's-length transactions. There is ample evidence to support the master's conclusion that there were then sufficient danger flags flying to put appellant and his attorney, Allen Samuels, who at the time was also acting as the attorney for Theo. Rosengarten and The Theo. Rosengarten Co., Inc., on notice or inquiry as to the existence of prior encumbrances against the property as to which Federal Title Insurance Company's binders were issued. And the evidence fully supports the master's conclusion that when appellee's binders were later substituted for those of Federal Title Insurance Company, the appellant and his attorney, by the wording of appellee's binders, were immediately put on notice to inquire into the extent of the alleged authority of appellee's state agent, Howard Goll, and/or sub-agent, Gibralter Title, Inc., to depart from the requirement that no commitment to insure could issue until after an examination of the complete abstracts of title or run sheets and approval thereof by appellee's duly authorized examining attorney. It is significant that said attorney, appearing as a witness, did not testify that at the time of the closings he had no present knowledge that the titles were encumbered; his testimony being that as Theo. Rosengarten had given the affidavits, he "sincerely believed" that the prior encumbrances had been removed.
The fact that appellee had placed in the hands of its sub-agent, Gibralter Title, Inc., binder and policy forms to be used in the insuring of titles does not support appellant's contention that the sub-agent had indiscriminate authority to issue *377 same and bind the appellee. Possession of such materials does not of itself create an appearance of authority sufficient to bind the insurer to any insurance contract executed in its name by the agent, nor does such possession, though vested by the principal, clothe an agent with apparent authority to make contracts of insurance which differ in terms from such forms. 3 Couch on Insurance 2d, Sec. 26:67 at p. 541, citing Perry v. New York Life Ins. Co., Sup., 22 N.Y.S.2d 696 (1940), and Great American Casualty Co. v. Eichelberger, Tex.Civ.App., 37 S.W.2d 1050 (1931).
It is the rule of this jurisdiction that whatever is sufficient to put a person on inquiry amounts in point of law to notice, provided there is a duty to make the inquiry and such inquiry could lead to a knowledge of facts which, under the circumstances of the particular case, calls for application of the rule in order to do equity. Chatlos v. McPherson, Fla. 1957, 95 So.2d 506; Farish v. Smoot, Fla. 1952, 58 So.2d 534. Means of knowledge, with the duty of using them, are in equity equivalent to knowledge itself. Sapp v. Warner, 1932, 105 Fla. 245, 141 So. 124, affd. 143 So. 648, motion den. 144 So. 481. Where there is a duty of finding out and knowing, ignorance resulting from a negligent failure to perform the duty has the same effect in law as actual knowledge. Chapman v. St. Stephens Protestant Episcopal Church, 1931, 105 Fla. 683, 136 So. 238, 138 So. 630, 139 So. 188, mod. 145 So. 757, 84 A.L.R. 566; Redstone v. Redstone Lumber & Supply Co., 1931, 101 Fla. 226, 133 So. 882; Farish v. Smoot, supra.
"A person has no right to shut his eyes or ears to information, and then say that he has no notice. The law will not permit him to remain wilfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand. If he has either actual or constructive information and notice sufficient to put him on inquiry, he is bound, for his own protection, to make that inquiry which such information or notice appears to direct should be made. If he disregards that information or notice which is sufficient to put him on inquiry and fails to inquire and to learn that which he might reasonably be expected to learn upon making such inquiry, then he must suffer the consequence of his neglect." 23 Fla. Jur., Notice and Notices, Sec. 6, p. 482, citing Sickler v. Melbourne State Bank, 1935, 118 Fla. 468, 159 So. 678.
The right to rely on a representation is closely bound up with the duty of the representee to use some measure of precaution to safeguard his own interest. Where the means of knowledge are equally available to both parties, one disregarding them will not be heard to say that he was deceived by the other's misrepresentations. Thus a misrepresentation as to matters that can be ascertained by an examination of public records is not ordinarily ground for relief. The representee is charged with knowledge of all facts that he could have learned through diligent inquiry, and once put on notice of fraud, he cannot avoid the consequences of his constructive knowledge of the fraud or fulfill his duty to investigate merely by going to the party he suspects of the fraud, nor can he desist from further investigation because he is reassured of the truth of the original representation. 14 Fla.Jur., Fraud and Deceit, Sec. 37, pp. 571-575; Sec. 38, pp. 576-577.
The evidence in the case sub judice shows that in December of 1961 all except one of appellee's binders had expired by their terms. Following such expiration Theo. Rosengarten came to attorney Samuels' office and removed a mortgage package from Samuels' desk. Appellant and Samuels both had knowledge thereof and pursued Rosengarten to restore the status quo. These facts, coupled with *378 the plain terms and conditions of the binders, amply support the master's conclusion that appellant had notice that the binders were fraudulently given. Nevertheless, plaintiff's attorney procured the "up-dating" of said binders, though aware of the fact that he had filed pleadings on behalf of The Theo. Rosengarten Co., Inc., in law suits that involved the validity of the titles to properties covered by mortgages that by the binders were purportedly to be insured by appellee's policies of title insurance. Under these circumstances appellant had constructive knowledge of the fraud being perpetrated by Theo. Rosengarten and Gibralter Title, Inc., and as regards the appellee became a party thereto.
The record is clear that appellant and his attorney knew that no examinations of title had been made by appellee's attorney as required by appellee's binders; that appellant's attorney actually knew that liens, defects and encumbrances existed with respect to the real properties covered by the subject binders, that same were superior to the purported "first mortgages" to be insured pursuant to said binders, and that said attorney so advised appellant; but the appellant under such circumstances, which the master found and we agree were sufficient to put him on inquiry as to the veracity of Theo. Rosengarten's statements, accepted in lieu of the required title examinations affidavits of Rosengarten to the effect that the mortgages being transferred were "first mortgages." The converse of the rule stated in Massachusetts Bonding & Ins. Co. v. Hoxie, 1937, 129 Fla. 332, 176 So. 480, applies here to charge appellant with his attorney's knowledge. In these transactions the attorney acted in the interest of his principal, the appellant, and under such circumstances the knowledge of appellant's attorney and agent is imputed to appellant, notwithstanding such knowledge was acquired in former transactions. First Bond & Mortgage Co. v. Yancey, 1932, 104 Fla. 229, 139 So. 597. However, the knowledge of the fraud perpetrated by appellee's sub-agent, Gibralter Title, Inc., was not imputed to appellee because the subject binders were issued in express violation of the agency and sub-agency contracts. 1 Fla.Jur., Agency, Sec. 87, p. 696.
The master's finding that appellant did not "consciously" participate in the fraud perpetrated upon appellant by The Theo. Rosengarten Co., Inc., and Gibralter Title, Inc., does not operate to excuse appellant from the responsibilities devolving upon him in consequence of the fact, as the master found, that "he was in a position to have discovered the fraud and was in possession of information sufficient to put him on inquiry which would have disclosed the fraud."
Having concluded that appellant has failed to sustain the burden of clearly demonstrating error, it would unduly extend this opinion to further discuss the facts. Suffice it to say that the chancellor did not err in approving, adopting, ratifying and confirming the findings, conclusions and recommendations of the Special Master and in entering the final decree based thereon.
We have carefully considered appellee's cross-assignment of error challenging the action of the trial court in taxing against appellee a fee on account of the services of appellant's attorney and a part of the costs in this cause, and find no merit therein.
Accordingly, the decree appealed should be and it is
Affirmed.
SHANNON, Acting C.J., and ANDREWS, J., concur.